**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

SHANTERRA JACKSON                                                                        PLAINTIFF

VS.                                              CIVIL ACTION NO.: 3:24-CV-00152-GHD-JMV

TOWN OF COMO, ET AL.                                                                    DEFENDANTS

**MEMORANDUM IN SUPPORT OF DEFENDANT THE TOWN OF COMO'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Shanterra Jackson has filed a lawsuit raising both state and federal law claims, in which she alleges that former-Como Police Officer Willis McNeil sexually assaulted her. She also sued the Town of Como, alleging that they violated unspecified Fourteenth Amendment rights and are otherwise liable for the alleged criminal act under respondeat superior and failure to train and supervise theories. Because Jackson has failed to adequately state any claim for relief against the Town, all claims should be dismissed.

**BACKGROUND**

Late in the evening on August 25, 2023, a Sardis, Mississippi police officer pulled over a vehicle in which Jackson was a passenger. Doc. No. 12 at Ex. A at 00:00-01:12. Although the vehicle initially pulled to the side of the road, when the officer exited the patrol car, the vehicle sped off. *Id.* A chase ensued until the vehicle again pulled over in Senatobia. *Id.* at 01:12-06:10. Several departments participated in the pursuit and subsequent stop. *See generally* Ex. A. Como police officer Willis McNeil was one of the officers who responded. *Id.*

After the vehicle stopped, the driver was arrested. *Id.* at 06:10-12:13. Jackson was detained. *Id.* at 12:10-31:45. While detained, Jackson admitted to consuming alcohol and having alcohol in the vehicle, and the officers determined she was not capable of driving the

PD.47972151.1

vehicle. *Id.* at 13:08-15:00, 16:40-21:16; Doc. No. 12 at Ex. B at 27:40-27:50. A tow truck was called for the vehicle. Doc. No. 12 at Ex. A at 13:08-15:00, 16:40-21:16.

While waiting for the tow truck, Jackson repeatedly requested to be driven home – to Independence, Mississippi – by Officer McNeil or the other officers. Doc. No. 12 at Ex. B at 24:18-25:10, 33:25-34:50. Officer McNeil repeatedly declined, offering instead to drop her off at gas station across the street. *Id.* Jackson did not like that idea and insisted she be taken home. *Id.* Officer McNeil finally relented to an extent, agreeing to drive her to the truck stop in Como. *Id.* at 44:50.

Contrary to her complaint, video clearly shows that Jackson was unhandcuffed prior to her voluntarily getting in the police vehicle. *Id.* at 41:50-47:57. Also contrary to the complaint, video shows that Officer McNeil was not wearing a body camera at the time. *Id.* at 26:44.

Once McNeil gets in the car, there is no further video evidence. Jackson, of course, alleges that McNeil took her to a wooded area and sexually assaulted her.

Eight months later, this lawsuit was filed against McNeil, the City of Senatobia, and Senatobia Police Chief Richard Chandler. Doc. No. 1. When it was pointed out through admissions and video evidence that McNeil was not working for Senatobia at the time of the incident, Senatobia and Chief Chandler were dismissed on July 25, 2024. Doc. Nos. 15-16. Several months later, Jackson amended her complaint to add Como and Boskey. Doc. NO. 40. Jackson subsequently agreed to dismiss Boskey. Doc. No. 48.

### STANDARD OF REVIEW

A Rule 12(c) motion to dismiss is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002). Under the standard, the Court asks whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). The Court may consider the pleadings, documents attached to the pleadings, documents central to the claims that are referenced in the pleadings, and matters of public record that may be judicially noticed. *E.g.*, *Doe*, 853 F.3d at 800; *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) ("In considering a motion for judgment on the pleadings under Rule 12(c), the court is generally limited to the contents of the pleadings, including attachments thereto. The 'pleadings' include the complaint[ and] answer to the complaint[.]"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT AND AUTHORITIES

Jackson brings claims against the Town under both federal and state law. Under federal law, Jackson brings an unspecified Fourteenth Amendment claim and a claim for failure to train and supervise. Under state law, Jackson claims the Town is liable under a respondeat superior theory. Each claim will be addressed in turn.

### Federal Law Claims

The Section 1983 framework that applies to the claims brought against the Town is settled. Actions against municipalities are analyzed under a framework that requires a plaintiff to show both (1) that a violation of the Constitution occurred and (2) that a governmental policy or custom was the moving force behind the violation. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Jackson has not plausibly pled that the Town had an unconstitutional policy or custom. Neither can the Town be held liable because it cannot be said that McNeil – based on Jackson's allegations and the video evidence in the record – was acting "under the color of law" at the time he allegedly sexually assaulted Jackson.

PD.47972151.1

*Monell*.  Although the Town does not admit that Jackson suffered any constitutional violation, on a motion to dismiss, the Town recognizes it is bound to the allegations in the complaint (except where those allegations are clearly contradicted by other video evidence in the record).  But even if she could prevail against McNeil, a mere constitutional violation is inadequate to impose liability on the Town.  It is settled that municipalities are not vicariously responsible for the actions or inactions of their employees. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). To be sure, municipal liability cannot be imposed "under a respondeat superior theory of liability." *See Longino v. Hinds Cty., Miss.*, 2014 WL 4545943, *6 (S.D. Miss. 2014).

There instead must be "something more" to impose liability on the municipality, i.e. a demonstration that the constitutional violation occurred because of a municipal policy or custom. *Piotrowski*, 237 F.3d at 578.  A municipality is responsible only for its own policymaking conduct, not the conduct of its employees. *Longino*, 2014 WL 4545943 at *6. Jackson has not plausibly pled, and certainly cannot prove, a basis for *Monell* liability in this case. *See*, *e.g.*, *Thomas v. State*, 2018 WL 1308275, *20-21 (N.D. Tex. 2018) (granting motion to dismiss on municipal liability claim); *McKinley v. Yarber*, 2015 WL 6554772, *3 n.2 (S.D. Miss. 2015) (same).

For starters, to survive a motion for judgment on the pleadings, Jackson must do more than merely recite the elements of a *Monell* claim—she must "plead facts that plausibly support each element of § 1983 municipal liability." *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). "Boilerplate allegations of municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient.'" *Vess v. City of Dallas*, 2022 WL 625080, *5 (N.D. Tex. Mar. 3, 2022). Facts in support of municipal liability are lacking here.

- 4 -

In attempt to get around the no-respondeat superior-liability rule, Jackson does not allege that the Town had any unconstitutional written policies or even a custom of such alleged violations. Instead, she seeks to establish liability under a negligent, hiring, training, retention and supervision theory.[1] *See* Doc. No. 40 at pp.6-7.  But such a theory fails.

Negligent Hiring, Training, Supervision, and Retention.  A negligent hiring, training, supervision, and retention theory is a non-starter, since a "§ 1983 claim . . . cannot be based upon mere negligence."  *See LCS Corrections Services, Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 672 n.8 (5th Cir. 2015).  To reiterate: an unconstitutional policy or custom is required.  *See Peterson*, 588 F.3d at 847.

Jackson once again does not identify an express policy that she believes is unconstitutional, nor has she identified a widespread pattern of similar instances that could give rise to an unofficial municipal custom.  *See Peterson*, 588 F.3d at 850-51.  The theory is related to Defendant McNeil's hiring, supervision, and training.

Attacks on hiring, training, and supervision may be analyzed together, since all require deliberate indifference on the part of a final policymaker.  *See*, *e.g.*, *Brown v. Callahan*, 623 F.3d 249, 253-54 (5th Cir. 2010); *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410-11 (1997).  And, in addition to deliberate indifference on the part of a final policymaker, a plaintiff must demonstrate a causal link between the deliberate indifference and the specific injury in question.  *Callahan*, 623 F.3d at 254; *Brown*, 520 U.S. at 415.  Jackson cannot satisfy any of these requirements, much less all of them.

---

[1] Although pled as such, negligent hiring, training, supervision, and retention is not a standalone constitutional claim.  Instead, it is (at most) a theory of municipal liability.  *E.g.*, *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  It is also unclear which constitutional violation Jackson alleges the Town is responsible for.  The only constitutional violation in which the Town is named is the unspecified Fourteenth Amendment violation.

PD.47972151.1

Start with the "final policymaker," which the complaint identifies as the Fred Boskey and "the Town." Doc. No. 40 at ¶28. That is incorrect. In past cases, federal courts in Mississippi have explained that the Board of Aldermen – not the police chief – is the final policymaker under Mississippi law. *See Sockwell v. Calhoun City*, 2019 WL 3558173, *2-3 (N.D. Miss. 2019). Under Mississippi law, the Board has sole authority over hiring and firing. *See* Miss. Code §§ 21-3-5 and 21-21-3. And the Board is also responsible under state law for "mak[ing] all needful police regulations necessary for the preservation of good order and peace[.]" Miss. Code § 21-19-15. Given that there are no specific allegations stating what the Town's board supposedly did wrong, there can be no municipal liability. *See*, *e.g.*, *Higginbotham v. City of Louisville*, 2019 WL 4934949, *2 (N.D. Miss. 2019) (quoting Fifth Circuit precedent for the rule that "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts").

Then there is deliberate indifference, which is "an extremely high standard" that requires a "stringent" level of culpability. *See Connick*, 563 U.S. at 62; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In all but extraordinary cases, there must be evidence of "a pattern of similar incidents" that would provide notice that hiring, supervision, or training is constitutionally deficient. *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010).

It has long been "held that[,] if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' faced by jailers and peace officers.'" *See O'Neal v. City of San Antonio*, 344 F. App'x 885, 888 (5th Cir. 2009). There is no allegation that McNeil did not receive the minimum level of training.

Nor is there any allegation that anything in McNeil's employment history would have alerted the Town that he would be likely to commit the <u>specific violation</u> in question: sexual assault.

Instead, there are wholly conclusory and vague allegations that (1) "Defendant Boskey and Defendant Town of Como knew or should have known that Defendant McNeil needed supervision or further training, yet, both Defendant Boskey and Defendant Town of Como negligently failed to employ such supervision or further training" and (2) "[t]here were specific policies in place that Defendants knew or should have known about, yet failed to follow." Doc. No. 40 at ¶¶29-30. But not following protocol or not granting unspecified training or supervision does not equate to committing constitutional violations, much less the specific violation alleged here. *See*, *e.g.*, *United States v. Thomas*, 997 F.3d 603, 615-16 (5th Cir. 2021) ("The issue before us is whether the officers' conduct violated the Fourth Amendment [and] [w]hether a police department's specific policy limits officers from engaging in conduct that the Constitution permits has little relevance to the question of whether [there is] a violation of the Constitution itself."); *Harris v. Payne*, 254 F. App'x 410, 417 (5th Cir. 2007) ("That Zugg and Waldrop also violated internal policies does not transform Harris's claim into one of constitutional dimension."); *United States v. De Leon-Reyna*, 930 F.2d 396, 399-400 (5th Cir. 1991) (en banc) ("[T]he issue here is not whether Martinez should have followed his unit's code word policy, but rather whether his good faith reliance on the license plate report, along with the other circumstances, in determining to stop the defendant's truck, was objectively reasonable. We do not view the code word policy as being constitutionally mandated or as establishing a constitutional minimum for reliability. Moreover, the policy plainly does not have the force of law, and there is nothing to suggest that it is even written, much less published."). Jackson pleads no other incidents involving alleged sexual assaults. *See Terrell v. Harris Cty.*, 2024 WL

- 7 -

4446408, *3 (5th Cir. Aug. 16, 2024) (dismissing for failure to state a claim *Monell* claim against county where plaintiff alleged only her own sexual assault).

In another case before this Court brought by the same Plaintiff's counsel, this Court dismissed the *Monell* claim against the City of Oxford as factually untrue. *Clayton v. City of Oxford, Miss.*, 2022 WL 17463364, *4 (N.D. Miss. May 31, 2022). As for the new "factual" allegations put forth in support of the plaintiff's improper request to amend, this Court found that the "string of suppositions, standing on its own, is devoid of specific facts that would cause any complaint to cross the line separating possibility and plausibility, and would thus be inadequate to support a viable complaint." *Id.* at *5. Jackson's allegations, which are even more general and conclusory than those in *Clayton*, do not come anywhere close to the line.

Simply put, Jackson has not shown any similar incidents that could satisfy the deliberate indifference standard and, indeed, specifically pleads "negligence." Doc. No. 40 at ¶¶27, 29. Her claims against the Town should be dismissed. *See Sanders-Burns*, 594 F.3d at 382; *LCS Corrections Services, Inc.*, 800 F.3d at 672 n.8.

Finally, there is the problem of causation, which the Supreme Court has called "rigorous" in this context. *See Brown*, 520 U.S. at 415. Conclusory allegations that McNeil's hiring or a lack of training or supervision is what led to the alleged assault do not suffice. *See*, *e.g.*, *Justiniano v. Walker*, 986 F.3d 11, 23 (1st Cir. 2021) (explaining that speculative inferences are not enough). "Proving that an injury or accident <u>could have been avoided</u> if an employee had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct[,] will not suffice." *Connick*, 563 U.S. at 68 (emphasis added).

\* \* \*

- 8 -

The Supreme Court has explained that "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61. It has likewise explained that "[c]ases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause. . . . Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Brown*, 520 U.S. at 415. This is not a case where the Town can be held liable. Jackson has failed to allege any deliberate action by the Town that led to the specific alleged constitutional violation. *E.g.*, *id.* The Town and official capacity defendants should be dismissed.

Color of Law. Failure to plead a plausible policy or custom is fatal to Jackson's claims against the Town. The Town should be dismissed for this reason alone. Alternatively, though, Jackson's Section 1983 claims also fail because McNeil was not acting under color of law.

Under 42 U.S.C. § 1983, one may sue "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State" violates his or her constitutional rights. Based on this language, the Supreme Court has explained that, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). More simply, "[u]nder 'color' of law means under 'pretense' of law." *Screws v. United States*, 325 U.S. 91, 111 (1945). "Generally, if an

- 9 -

[employee] is performing their official duties, their acts 'are included whether they hew to the line of their authority or overstep it,' though 'acts of officers in the ambit of their personal pursuits are plainly excluded.'" *Gomez v. Galman*, 18 F.4th 769, 775-776 (5th Cir. 2021)(quoting *Screws*, 325 U.S. at 111).

Importantly, "not every action undertaken by a person who happens to be a state actor is attributable to the state." *Bryant v. Miss. Military Dep't*, 519 F. Supp. 2d 622, 627 (S.D. Miss. 2017) (quoted case omitted). "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters v. City of Morristown, Tenn.,* 242 F.3d 353, 359 (6th Cir. 2001) (citations omitted) (citing *West,* 487 U.S. 42, 49-50). In general, "a defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." *Harmon,* 2005 U.S. Dist. LEXIS 42425 at *13, 2005 WL 1106975, at 5 (citations omitted). "[E]valuation of whether particular conduct constitutes action taken under the color of state law, must focus on the actual nature and character of that action." *Schultz v. Wellman,* 717 F.2d 301, 304 (6th Cir. 1983). Here, the nature and context of McNeil's alleged acts belies any reasonable conclusion that he acted under color of state law.

First is the fact that Jackson was unhandcuffed and free to leave prior to getting in the vehicle. She insisted on being driven by Officer McNeil, though he declined on several occasions. More importantly, he told her he could get in trouble if he drove her to Como. She still insisted on being driven by Officer McNeil. She was not forced or persuaded to act solely because of Officer McNeil's status as an officer. She knew that, by driving her anywhere, he

- 10 -

PD.47972151.1

was stepping outside of his duties as an officer. She willingly got in the vehicle. Anything that occurred after that cannot be said to have occurred by "virtue of" McNeil's status as an officer. Further, beyond the allegation that she was handcuffed when placed in the car (which is proven false by clear video evidence), there are no allegations that McNeil used his position as an officer in any way. *Contra. Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996).

This is more akin to *Delcambre v. Delcambre*, 635 F.2d 407 (5th Cir. Unit A 1981) and *Townsend v. Moya*, 291 F.3d 859 (5th Cir. 2002). In *Delcambre*, the Court held that an on-duty police chief who assaulted his sister-in-law at the police department, the altercation as a purely private pursuit born out of a family matter. 635 F.2d 407. In *Townsend*, the Court held that a prison guard was not acting under color of law when he stabbed an inmate after "horseplay" led to a physical reaction. 291 F.3d 859. The Court made this determination even though the guard had direct authority over the inmate and possessed the knife used by virtue of his position and authority. *Id.* at 861-63. The Court held that the guard had not invoked or exercised authority during the altercation and was pursuing a "purely private aim." *Id.* at 862-63.

The same should be found here.

***Official Capacity Claims***. Jackson named both Fred Boskey and Willis McNeil in their official capacity designation. Doc. No. 40. While Plaintiff has agreed to the dismissal of Boskey, Doc. No. 48, McNeil (who undersigned counsel does not represent) is still named in his official capacity. The official capacity designation is improper. An official capacity claim is "actually a claim against the governmental entity itself." *Tuskan v. Jackson Cty., Miss.*, 2014 WL 3747606, *2 (S.D. Miss. July 29, 2014). When the government entity itself is named as a defendant, any official capacity claims are redundant and should be dismissed with prejudice.

- 11 -

*Id.* The Town is named here. Any official capacity claims against McNeil (and Boskey) should be dismissed.

## State Law Claims

While Jackson does not substantively plead any state law claims against the Town, she does plead a "respondeat superior" claim, alleging the Town should be liable for all her alleged harms. *See generally* Doc. No. 40. But any claim against the Town under state law is subject to the MTCA. Jackson's respondeat superior theory seeks to improperly circumvent the MTCA. It fails.

### 1. The Town is immune from the claims under the Mississippi Tort Claims Act.

Jackson plainly misunderstands the MTCA. Although she plead that at all times McNeil was acting within the course and scope of his employment, that does not mean that the Town can be held liable for all claims. Doc. No. 40 at ¶¶3 & 38. Municipalities may be liable for an individual's acts or omissions but <u>only</u> if sovereign immunity has been waived and no exemption applies and <u>only</u> if a plaintiff can establish all of the substantive elements of the state-law claim being pursued. *See Grimes v. Pearl River Valley Water Supply*, 930 F.2d 441, 443 (5th Cir. 1991).

Importantly, the Town is immune from all claims involving "conduct constitut[ing] fraud, malice, libel, slander, defamation, or any criminal offense. Miss. Code §§ 11-46-5(3), -7(2). And the MTCA's protections apply no matter what a plaintiff names their claim: it is the substance that matters. A plaintiff cannot plead around the MTCA. *E.g.*, *Kelley, LLC v. Corinth Pub. Utilities Comm'n*, 200 So. 3d 1107, 1118 (Miss. Ct. App. 2016) ("Efforts to re-label tort suits as something else in order to avoid some part of the [MTCA] are ineffective.") (quoting *Alexander v. Taylor*, 928 So. 2d 992, 995 (Miss. Ct. App. 2006)).

- 12 -

PD.47972151.1

It is clear that what Jackson alleges is a crime: sexual assault. Miss. Code § 97-3-97, - 101. It does not matter that she has styled her claims as one of negligence. Her allegations prove otherwise. *See* Doc. No. 40 at ¶24 ("Defendant McNeil breached that duty by recklessly causing Plaintiff immense harm through sexual assault. Such conduct was shocking to the conscious and against what a police officer is sworn to do to protect the public."). The Mississippi Supreme Court has held that it is clear that the Town is immune from such allegations. *See City of Jackson v. Sandifer*, 107 So. 3d 978, 985-86 (Miss. 2013); *Hollins v. City of Jackson*, 145 F. Supp. 2d 750, 757 (S.D. Miss. 2000).

Neither can the Town be held liable for false arrest or imprisonment. Both require malice as an essential element. The claims against the Town fail as a matter of law. *See Hudson v. Palmer*, 977 So. 2d 369, 382 (Miss. Ct. App. 2007) (noting that element of false arrest claim is malice); *see also Burnett v. Hinds Cty. ex rel. Bd. of Super's*, 313 So. 3d 471, 477 (Miss. 2020) (false arrest falls "outside of" the MTCA). And, again, the thrust of Jackson's false arrest and false imprisonment claim is that she was, in essence, kidnapped by McNeil for the purpose of his sexually assaulting her. Kidnapping is, of course, a crime. *See* Miss. Code § 97-3-53.

What's more is that, regardless of Jackson's legal conclusion that McNeil was "acting within the course and scope of his employment," there is absolutely no argument that an officer's taking a person into the woods to sexually assault that person is "acting in furtherance of his employer's business." *See Sandifer*, 107 So. 3d at 985-86. So regardless of any element of any specific claim or whether such conduct can fairly be considered a crime or not, the Town is immune as there is no argument that McNeil was "acting whin the course and scope of his

- 13 -

employment" so as to waive immunity.[2]  Miss. Code § 11-46-5(1); *Sandifer*, 107 So. 3d at 985-86.

*Exemptions.*  Even if not immune under § 11-46-5, to the extent the respondeat superior claim is premised on a negligent training, hiring, retention, or supervision claim, the Town is immune under the exemptions in § 11-46-9.  An MTCA "exemption, like that of qualified or absolute immunity, is an entitlement not to stand trial rather than a mere defense to liability and, therefore, should be resolved at the earliest possible stage of litigation."  *McElroy v. City of Brandon*, 198 So. 3d 373, 378 (Miss. Ct. App. 2015).  Immunity "is a question of law[,]" meaning that it is properly addressed by motion.  *Id.*  Two exemptions applies here.

Discretionary-Function Exemption. "[M]atters dealing with personnel, including the hiring, supervision and training of employees were determined to be discretionary functions in the post-*Wilcher* case of *City of Clinton v. Tornes*, 252 So. 3d 34, 40 (¶23) (Miss. 2018)," and thus the City is entitled to discretionary function immunity to Jackson's claims under Mississippi Code § 11-46-9(d).  *Bailey v. City of Pearl*, 282 So. 3d 669, 677 (Miss. Ct. App. 2019.

Government-Services Exemption.  The MTCA also exempts claims "[a]rising out of the exercise of discretion in . . . the hiring of personnel and, in general, the provision of adequate governmental services."  Miss. Code § 11-46-9(g).  Any claim premised on an alleged negligent

---

[2] Even if not immune, the false arrest and imprisonment claims against the Town are time barred. Because they involve an element of malice, they fall outside of the MTCA.  This means that Jackson cannot take advantage of any portion of the MTCA, including its statute of limitations or tolling provisions.  Mississippi courts have been clear about this:  "The MTCA tolling provisions do not apply to claims outside the MTCA."  *Burnett*, 313 So. 3d at 477.

False arrest and imprisonment claims are subject to a one-year statute of limitations.  Miss. Code § 15-1-35.  Jackson's claims accrued at the time of the incident on August 25, 2023.  Doc. No. 40 at ¶7. She had until August 25, 2024 to file suit.  Although she initially filed her complaint on May 21, 2024, it did not name the Town.  She did not name the Town until October 22, 2024 – over two months after the statute of limitations expired.

- 14 -

PD.47972151.1

hiring, training, supervision, or retention theory clearly falls within the scope of this exemption. The Town is immune.

### Punitive Damages

It appears that Jackson seeks punitive damages against all defendants. *See* Doc. No. 40 at p.8, ¶c. Because the Town and the official capacity defendants are immune from such damages, Jackson's claim for punitive damages must be dismissed against them, even if any other claims could survive. *See*, *e.g.*, *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981) (a municipality is immune from punitive damages under § 1983); Miss. Code § 11-46-15(2) ("No judgment against a governmental entity or its employee for any act or omission for which immunity is waived under this chapter shall include an award for exemplary or punitive damages[.]").

### III. CONCLUSION

For all of these reasons, the Town should be dismissed. Jackson has no viable claim against the Town under federal or state law.

THIS, the 13th day of January, 2025.

Respectfully submitted,

**PHELPS DUNBAR, LLP**

BY: */s/ Mallory K. Bland*
    G. Todd Butler, MSB #102907
    Mallory K. Bland, MSB #105665
    1905 Community Bank Way, Suite 200
    Flowood, Mississippi 39232
    Telephone: 601-352-2300
    Telecopier: 601-360-9777
    Email: butlert@phelps.com
    Email: blandm@phelps.com

    **ATTORNEYS FOR DEFENDANT
    THE TOWN OF COMO**

PD.47972151.1

## CERTIFICATE OF SERVICE

I certify that, on January 13, 2025, I electronically filed this motion with the Clerk of the

Court, using the CM/ECF system, which sent notification of such filing to all counsel of record.


/s/ Mallory K. Bland
Mallory K. Bland

PD.47972151.1